**FILED**

**FEBRUARY 25, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**08 C 1146**

| | | |
|---|---|---|
| PAMADO, INC., d/b/a CENTRAL BEVERAGE COMPANY, an Illinois corporation, | ) ) ) | |
| | ) | Case No. |
| Plaintiff, | ) ) | **JUDGE DOW** |
| | ) | Judge: **MAGISTRATE JUDGE ASHMAN** |
| v. | ) ) | |
| | ) | Magistrate Judge: |
| HEDINGER BRANDS, LLC, an Indiana limited liability company, | ) ) ) | Removed from the Circuit Court of Cook County, Illinois, Law Division |
| Defendant. | ) | Case No. 08 L 000646 |

## NOTICE OF REMOVAL

Defendant, HEDINGER BRANDS, LLC ("Hedinger"), pursuant to 28 U.S.C. §§ 1441 and 1446, hereby removes this action filed by Plaintiff, PAMADO, INC. d/b/a CENTRAL BEVERAGE COMPANY ("Central Beverage"), from the Circuit Court of Cook County Illinois, to the United States District Court for the Northern District of Illinois, Eastern Division, which is the judicial district and division in which the action is pending, on the following grounds:

1.    Removal of this action to this Court is proper under 28 U.S.C. § 1441(a) because this Court would have had original jurisdiction of the action on the basis of diversity of citizenship, 28 U.S.C. § 1332, had the action originally been brought in this Court.

2.    On January 18, 2008, Central Beverage filed an action in the Law Division of the Circuit Court of Cook County, Illinois, entitled *Pamado, Inc. d/b/a Central Beverage Company v. Hedinger Brands, LLC*, Case No. 08-L-000646.  A true and correct copy of the Complaint, with exhibits, and all process served on Hedinger is attached hereto as Exhibit A.

3.    This is an action over which this District Court has diversity jurisdiction, pursuant

to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

4.      For purposes of 28 U.S.C. § 1332 and 28 U.S.C. § 1441, the citizenship of a limited liability company is the citizenship of each of its members. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007); *Camico Mutual Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007); *see also, City of Naperville v. Comcast of Illinois/West Virginia, LLC*, Case No. 03 C 1512, 2003 U.S. Dist. LEXIS 10998, *7-8 (N.D. Ill. June 30, 2003) (Removal was proper because there was complete diversity, as each of the defendant limited liability company's members were citizens of different states than the plaintiff) (attached hereto as Exhibit B).

5.      Hedinger is an Indiana limited liability company with its principal place of business in Jasper, Indiana. (Complaint, ¶ 3.)  Hedinger's sole member is Keith Hedinger. Mr. Hedinger is a citizen and resident of Indiana who resides in Jasper, Indiana.  Thus, based on the residency of its sole member, Hedinger is a citizen of Indiana.

6.      Central Beverage is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in the Village of Broadview, Cook County, Illinois. (Complaint, ¶ 2.)

7.      Central Beverage's Complaint sets forth a demand for money damages in the amount of $171,000.  (Complaint, p. 4.)

8.      Because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and because Central Beverage is a citizen of a different state than Hedinger and its sole member, diversity jurisdiction over this matter exists pursuant to 28 U.S.C. § 1332, and the lawsuit is properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446(a).

9.      Removal of this action to this Court also is proper under 28 U.S.C. § 1441(b)

2

because, as set forth above, no party properly joined as a defendant is a citizen of the State of Illinois in which this action has been brought.

      10.     Removal of this action is not prohibited by 28 U.S.C. § 1445.

      11.     Hedinger filed this Notice of Removal within thirty (30) days of the date when this action became removable, and within the time prescribed for filing this Notice of Removal under 28 U.S.C. § 1446. Central Beverage served a summons and a copy of the Complaint on Hedinger on February 6, 2008. *See* Ex. A.

      12.     Written notice of the filing of Hedinger's Notice of Removal has seen served on counsel for Central Beverage as evidenced by the attached Certificate of Service. A true and correct copy of Hedinger's Notice of Removal, with attached exhibits, also has been filed with the Clerk of the Circuit Court of Cook County, State of Illinois.

      WHEREFORE, Defendant, Hedinger Brands, LLC, hereby removes this action from the Circuit Court of Cook County, Illinois, to this United States District Court.

                      Respectfully submitted,

                      HEDINGER BRANDS, LLC

By: _____
                  One of its Attorneys

                  Jonathan P. Froemel
                  James E. Michel
                  BARNES & THORNBURG LLP
                  One North Wacker Drive, Suite 4400
                  Chicago, Illinois  60606-2833
                  Telephone:    312.357.1313
                  Facsimile:    312.759.5646
                  E-mail:      jfroemel@btlaw.com
                                jmichel@btlaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing NOTICE OF REMOVAL has been served this 25th day of February 2008, by hand delivery and by depositing a copy of the same in the United States mail, first class postage prepaid and properly addressed to the following counsel of record:

Richard A. Del Giudice
Earl E. Farkas
David N. Pruitt
GOZDECKI & DEL GIUDICE, LLP
221 N. LaSalle Street
Suite 2200
Chicago, Illinois 60601

James E. Michel

CHDS01 448774v2

4

# EXHIBIT A

**254**

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 (              ). |

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____LAW_____ DIVISION

2008L000646
CALENDAR/ROOM N
TIME 00:00
Breach of Contract

(Name all parties)

PAMADO, INC. d/b/a CENTRAL BEVERAGE COMPANY

v.

No. _____

HEDINGER BRANDS, LLC

### SUMMONS
c/o Keith G. Hedinger, 950 S.
To each Defendant: Hedinger Brands, LLC St. Charles St., Jasper, IN 47546

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ____801____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 31746

Name: Gozdecki & Del Giudice, LLP

Atty. for: Plaintiff

Address: 221 N. LaSalle St. Ste. 2200

City/State/Zip: Chicago, IL 60601

Telephone: (312) 782-5010

Service by Facsimile Transmission will be accepted at: _____

WITNESS, JAN 16 2008

_____
Clerk of Court

Date of service: _____,
(To be inserted by officer on copy left with defendant or other person)

(Area Code)  (Facsimile Telephone Number)

SERVED: 2.6.08

S HERIFF
DEPT

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

*254*

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 (              ), |

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, _____LAW_____ DIVISION

(Name all parties)

PAMADO, INC. d/b/a CENTRAL BEVERAGE COMPANY

v.

HEDINGER BRANDS, LLC

2008L000646
CALENDAR/ROOM N
TIME 00:00
Breach of Contract

No. _____

### SUMMONS
c/o Keith G. Hedinger, 950 S.
To each Defendant: Hedinger Brands, LLC St. Charles St., Jasper, IN 47546

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room ___801___, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 31746

Name: Gozdecki & Del Giudice, LLP

Atty. for: Plaintiff

Address: 221 N. LaSalle St. Ste. 2200

City/State/Zip: Chicago, IL 60601

Telephone: (312) 782-5010

Service by Facsimile Transmission will be accepted at: _____

WITNESS, _____,

_____

Clerk of Court

Date of service: _____,
(To be inserted by officer on copy left with defendant or other person)

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**Firm I.D. #31746**

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, LAW DIVISION

PAMADO, INC., d/b/a CENTRAL          )
BEVERAGE COMPANY, an Illinois        )
corporation,                         )
                                     )
                    Plaintiff,       )     Case No.
                                     )
         v.                          )
                                     )
HEDINGER BRANDS, LLC, an Indiana     )
limited liability company,           )
                                     )
                    Defendant.       )

## COMPLAINT

Plaintiff, Pamado, Inc., d/b/a Central Beverage Company ("Central Beverage"), by and

through its counsel, Gozdecki & Del Giudice, LLP, states as follows for its Complaint against

defendant Hedinger Brands, LLC ("Hedinger Brands"):

### Introduction

1.       Hedinger Brands, as assignee of a Trademark License and Distribution

Agreement ("Agreement") between Central Beverage and The Monarch Beverage Company,

Inc. ("Monarch"), breached the Agreement by failing to provide Central Beverage with the

exclusive right to distribute all product lines and flavors of Dad's Root Beer ("Dad's") products

in the Chicago area.  More particularly, Hedinger permitted one or more entities to sell Dad's

products to Jewel/Osco, one of the largest retailers in Central Beverage's exclusive territory.  As

a consequence, Central Beverage has been damaged in an amount in excess of $60,000.

### The Parties

2.       Central Beverage is, and at all relevant times was, an Illinois corporation with its

principal place of business in the Village of Broadview, Cook County, Illinois.

3.       Hedinger, upon information and belief, is an Indiana limited liability company

with its principal place of business in Jasper, Indiana.

<u>**Venue and Jurisdiction**</u>

4.      This Court has jurisdiction over the parties pursuant to 735 ILCS 5/2-209 because this cause of action arises out of the transaction of business in the State of Illinois. This Court additionally has jurisdiction because the Agreement provides for jurisdiction in the State of Illinois.

5.      Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because the transactions out of which this cause of action arose took place in Cook County, Illinois.

<u>**Common Allegations**</u>

6.      On February 6, 2006, Central Beverage entered into the Agreement with Monarch. Pursuant to the Agreement, Monarch granted to Central Beverage the exclusive right to distribute, *inter alia*, all lines and flavors of the Dad's products in a defined territory, which includes a large portion of the Chicago area. A true and accurate copy of the Agreement is attached hereto as Exhibit A.

7.      In or around January 2007, Monarch sold, transferred and assigned to Hedinger all rights to the Dad's products. The Agreement between Monarch and Central Beverage was one of the agreements assigned by Monarch to Hedinger.

8.      There is little question the Agreement was assigned. Section 8.0 of the Agreement unequivocally allowed Monarch to fully and freely assign all rights pursuant to the Agreement without the consent of Central Beverage. On March 7, 2007, Monarch sent a letter to Central Beverage confirming its assignment of the Agreement. Also, Hedinger has never provided evidence that the Agreement was not assigned.

9.     After the assignment of the Agreement, Central Beverage continued to purchase Dad's products and distribute them within its exclusive territory. However, notwithstanding the exclusive Agreement and Central Beverage's performance of its obligations pursuant to the Agreement, in or around October 2007 Central Beverage discovered that a different company was selling Dad's products directly to Jewel/Osco stores located in Central Beverage's territory (the "Direct Sales"). The Direct Sales violate the exclusivity provision of the Agreement.

10.     Upon information and belief, more than 20,000 cases of Dad's products (in liters) have been sold to Jewel/Osco in violation of the Agreement. Central Beverage generates a profit of approximately $2.60 per case of liter products. As such, the Direct Sales resulted in Central Beverage losing at least $52,000.

11.     Moreover, on November 21, 2007, Hedinger gave notice to Central Beverage that it was terminating the parties' relationship. In the notice, Hedinger denied it was bound to the Agreement and, assuming it was bound to the Agreement, Hedinger claimed that Central Beverage was being terminated for cause because it purportedly failed to honor its contractual obligations by failing to (a) sell sufficient quantity of product and report sales, and (b) timely pay for a shipment of product.

12.     The purported termination was not for cause. Central Beverage would have sold sufficient quantities of product had Hedinger not permitted a competitor of Central Beverage to sell to Jewel/Osco in Central Beverage's exclusive territory. Further, Hedinger failed to take into consideration that (a) Central Beverage was not obligated by the Agreement to actually meet or exceed the sales goals set forth in the contract, but only to use its best efforts to reach those goals, and (b) the goals set forth in the Agreement took into consideration products that were not sold to Hedinger. In regard to payment, Central Beverage offset its obligation to pay for product against the lost profits it suffered as a consequence of Hedinger's breach of the Agreement.

3

13.    Paragraph 7.3 of the Agreement provides that an assignee of the Agreement that terminates the Agreement within twelve months of the sale or assignment of Monarch's rights under the Agreement shall pay to Central Beverage two times per case gross margin earned by Central Beverage during the preceding twelve months.  Hedinger, as assignee of the Agreement, terminated the Agreement within twelve months of its assignment.

14.    Central Beverage would have sold more than 22,000 cases of Dad's product during the 12 month period preceding Hedinger's termination if not for Hedinger's breach. Accordingly, in addition to the lost profits Hedinger owes to Central Beverage, Hedinger is liable to Central Beverage in the additional amount of more than $119,000, which represents two times Central Beverage's gross margin on all cases Central Beverage should have sold during the 12 month period preceding the termination if Hedinger had not breached the Agreement.

WHEREFORE, Central Beverage respectfully prays that this Honorable Court:

a.    Enter a judgment against Hedinger and in favor of Central Beverage finding that Hedinger breached the Agreement;

b.    Award to Central Beverage the damages caused by Hedinger's breach of the Agreement in an amount in excess of $171,000, the exact amount to be proven at trial;

c.    Award to Central Beverage the costs of this suit; and

d.    Award any further relief that this Court deems just and appropriate.

PAMADO, INC., d/b/a CENTRAL BEVERAGE COMPANY

BY:    _____
One of its Attorneys

Richard A. Del Giudice, Esq.
Earl E. Farkas, Esq.
David N. Pruitt, Esq.
**GOZDECKI & DEL GIUDICE, LLP**
221 North LaSalle Street
Suite 2200
Chicago, IL 60601
(312) 782-5010

4

### THE MONARCH BEVERAGE COMPANY, INC.
### TRADEMARK LICENSE AND
### DISTRIBUTOR'S AGREEMENT

THIS AGREEMENT made and entered into this 6th day of February, 2006, by and between THE MONARCH BEVERAGE COMPANY, INC., a corporation organized and existing under the laws of the state of Delaware (hereinafter referred to as "Company"), as party of the first part, and Central Beverage Company, a corporation organized and existing under the laws of the state of Illinois, (hereinafter referred to as "Distributor"), as party of the second part.

### WITNESSETH

WHEREAS, Company is the owner of the proprietary formulae essential for the manufacture of various soft drink concentrates syrups and beverages, and Company is the owner of Trademark(s) identified in Appendix "A" (hereinafter referred to as the "Trademark(s)") which are used in identifying and marketing such concentrates, syrups and beverages, and

WHEREAS, the Distributor desires to acquire from Company a license to use the Trademarks, and the right to sell and distribute certain beverages under the trademarks, within a defined and limited territory; and

WHEREAS, Company is willing to grant to the Distributor a license to use the Trademark(s), to authorize the Distributor to sell and distribute such beverages within a defined and limited territory, and has agreed to grant the Distributor, the right to use the Trademark(s) in connection with the sale and distribution of such beverages within such territory; and

WHEREAS, the Distributor declares that Company is the sole owner of the proprietary formulae and the Trademarks, that Distributor acquires no right of ownership of the proprietary formulae or the Trademarks by virtue of anything contained or implied by this Agreement, and that Distributor will not at any time contest Company's sole ownership and right to control the proprietary formulae or the Trademarks.

NOW THEREFORE, in consideration of the premises, which are incorporated and made a part of this agreement and of the mutual covenants contained herein, the parties hereto mutually agree as follows:

### GRANT OF RIGHT

1.0    Company hereby grants the exclusive right, except as set forth below to Distributor, to distribute and sell only in the restricted territory, defined and described in Appendix "C" (the "Territory"), only the package sizes listed in Appendix "B", and only the beverages listed in Appendix "A" (hereinafter referred to as the "Beverages").

(a)    The Distributor's right to sell and distribute Beverages in the Territory shall be exclusive except that the Company reserves the right to sell Beverages to chain or multiple outlets with operations in the Territory and one or more operations outside the Territory (hereinafter called the "National Account Customers") for an invasion fee of $1.00 per case for the accounts listed in Appendix D.

1.1    Except as set forth above, during the term of this Agreement, Company shall not grant the right to any other person, firm or corporation to sell and distribute the Beverages in the packaging specified above in the Territory; provided that Company shall not be bound by the provisions of this Paragraph 1.1



EXHIBIT
A

1

from the date on which Company receives written notice of termination of this Agreement from the Distributor as hereinafter provided.

1.2    This Agreement shall not be construed as affecting or impairing the right of Company to produce, sell and distribute, or cause to be produced, sold and distributed, concentrates, syrups and beverages in any form or manner, other than the Beverages in the packaging specified above in the Territory.

1.3    The privilege of the Distributor to sell and distribute the Beverages is limited to the Territory; and the Distributor may not sell or distribute the Beverages to any person for resale beyond the limits of the Territory without the written consent of Company first obtained.

1.4    The initial term of this Agreement is for three years, ~~which can be extended for a duration to~~ which shall be automatically ~~be determined by mutual agreement of both parties.~~ extended for successive three year periods subject to the termination provisions under section 7.

## GRANT OF TRADEMARK LICENSE

2.0    Company hereby grants to Distributor a License, but without the right to grant sublicenses, to use the Trademark(s) in connection with the sale and distribution within the Territory of the Beverages. When necessary and appropriate, Company agrees that Distributor may be registered as the registered user of the Trademark(s) for the Beverages within the Territory; and Distributor shall execute such documents and other papers and take such other action as may be deemed necessary or desirable by Company in order to effect such registration of Distributor as a registered user in the Territory. The License granted hereby shall immediately cease upon the termination of this Agreement pursuant to any of the provisions contained in this Agreement.

2.1    It is distinctly understood by both Distributor and Company that nothing contained herein shall in any way be deemed to convey, transfer, or assign to the Distributor any proprietary rights in or to the Trademark(s) licensed hereunder and that, to the contrary, the Trademark(s) shall at all times remain the property of Company. All costs and expenses relating to the obtaining or maintaining of any registration of the Trademark(s) in this Territory shall be borne by Company. In using the Trademark(s) under this Agreement, Distributor at all times shall recognize the ownership of said Trademark(s) by Company and the validity of said Trademark(s) and the registration thereof, and Distributor shall not at any time attack or put in issue, directly or indirectly, such validity or ownership.

2.2    Company reserves the complete and exclusive right to take whatever action it deems necessary or desirable in order to protect the Trademark(s) in the Territory, and Distributor agrees that Company shall have said complete and exclusive right. In the event that any infringement or threatened infringement of the Trademark(s) by any third party in the Territory shall come to the attention of Distributor, Distributor shall promptly notify, Company thereof, and Company in its sole discretion shall decide what action, if any, is to be taken with respect to such infringement or threatened infringement.

2.3    Distributor shall apply the Trademark(s) to all bottles, cartons, and other containers of the Beverages used, sold and distributed by Distributor under this Agreement, and in general shall conform to the requirements and instructions of Company with respect to the manner and use of the Trademark(s) in connection with the Beverages, in advertising materials and otherwise. Distributor shall use and apply to the Beverage labels, containers and cartons only those graphics and designs supplied to Distributor by Company. Distributor shall provide Company with copies of all labels used in connection with the Beverages.

2.4    If this Agreement is terminated at any time for any reason, Distributor shall as of the date of termination discontinue using the Trademark(s) and forever thereafter refrain (or cause those within its control to refrain, as the case may be) from using the Trademark(s) including any non-generic component thereof or any mark or words similar thereto in any trademark or trade name or in its name or in the name of

2

any corporation, firm, sole proprietorship or other organization of business owned, controlled or operated by Distributor. Distributor agrees that upon such termination of this Agreement it shall forthwith take or cause to be taken any and all action that Company may deem necessary on Distributor's part in order to terminate any registration of Distributor as a registered user of the Trademark(s).

2.5    Distributor shall not use the Trademark(s) in any way in connection with the production, use, sale, or distribution of any products other than the Beverages covered by this Agreement. Distributor agrees that it will comply with all applicable statutory requirements regarding trademark marking used in connection with the Beverages. Distributor also agrees that it will not use the Trademark(s) in any way which would tend to cause them to become generic names.

## PURCHASE OF BEVERAGES

3.0    The Distributor agrees to purchase from Company approved sources all of the Beverages required to supply fully every demand for the Beverages within the Territory.

## QUALITY CONTROL

4.0    For the purpose of assuring sale of the Beverages of the highest standards and quality, the Distributor shall purchase the Beverages exclusively from Company approved sources. The Distributor shall use only such types of containers and packaging materials as are from time to time approved by Company.

4.1    Representatives of Company shall have access to the Distributor's facilities for the purpose of inspecting and determining whether the Beverages are rotated, maintained and handled according to standards and requirements of the Company and the Distributor at the request of Company shall provide without cost to Company's designated research facility in the United States samples of the Beverages and any and all packaging materials used by the Distributor hereunder.

## DUTIES OF DISTRIBUTOR

5.0    The Distributor shall use, publish, maintain and/or distribute only such advertising of the Beverages as Company shall approve and authorize.

5.1    Each month the Distributor shall provide a written report to Company indicating the number of cases of the Beverages sold and distributed by the Distributor during the preceding month on forms supplied by Company for such purpose. Company may audit Distributor's records periodically for the purpose of verifying the accuracy of the number of cases sold, distributed and reported by Distributor.

5.2    The Distributor shall use its best efforts to promote, develop and service the market for the Beverages throughout the Territory and shall maintain and operate warehouses or other facilities, trucks, and other equipment as are adequate to meet all requirements for the sale and distribution of the Beverages within the Territory. The Distributor shall by prompt delivery, adequate service to customers, and otherwise, build and maintain a reasonable volume of patronage, no less than the minim requirements defined in 7.2 (b) for the Beverages throughout the Territory and will cooperate with Company in its plans for maintenance and expansion of the sale of the Beverages in the Territory.

5.3    Distributor will operate and maintain a clean and sanitary storage facility and will comply with all the requirements of Company, or of persons authorized by it, and of the relevant governmental authorities and local laws and regulations to guarantee the Beverages to be pure wholesome and of the highest quality.

3

5.4    The Distributor agrees to:

(a)    Maintain a well-trained sales force, adequate to service all customers within the Territory;

(b)    Keep said sales force fully informed as to Company's policies and adequately train said sales force to promote the sale of the Beverages in a manner which shall reflect favorably on Distributor and Company;

(c)    At all times to cooperate with Company in performing promotions and marketing programs mutually agreed upon within the Territory;

(d)    Afford representatives of Company reasonable opportunity to meet with and help train Distributor's sales force and merchandising personnel;

(e)    Maintain inventories of the Beverages which the parties mutually agree will be adequate to meet demand for Beverages in the Territory;

(f)    Promote the sale of the Beverages within the Territory in an aggressive and diligent manner;

(g)    Maintain prompt delivery service compatible with good business practice, the nature of the Beverages and the requirements of its customers; and

(h)    Acknowledges that Company is the owner all right, title and interest to the proprietary formulae necessary for the Beverages, soft drink concentrate, syrups and other materials supplied by Company or its designated suppliers to Distributor for use in Territory and Distributor undertakes and agrees not to reverse engineer any of the Beverages, soft drink concentrate, syrups and other materials or other materials to ascertain the formulae and shall not conduct any tests on the [Licensed Products] or the ingredients thereof. [Optional]

## NAME OF BUSINESS

6.0    The business of the Distributor shall be conducted under the name <u>Central Beverage Company</u> or another name which shall be mutually acceptable to Company and the Distributor.

6.1    Should the Distributor be authorized to use the Trademark(s) or any non-generic component thereof in any form of business organization or enterprise name, the Distributor shall immediately upon termination of this Agreement change such name and any registration thereof to exclude same and cease using all materials containing any usage thereof, including letterheads and business forms.

## TERMINATION

7.0    Company shall be entitled to terminate this Agreement forthwith, in the event of the Distributor becoming insolvent or bankrupt or subject to the provisions of any winding up or bankruptcy legislation, or going into liquidation, either voluntarily or under an order of a court of competent jurisdiction, or making a general assignment for the benefit of its creditors, or being placed in the hands of a receiver, or otherwise acknowledging its insolvency; or becomes unable to pay the debts when due.

7.1     The Distributor agrees to adhere to ethical business practices and high standards of business operation. The rights set forth herein are granted to Distributor because of and in reliance on Distributor's present ownership and ability to control management and any change in ownership or ownership control over fifty percent (50%) of the business shall constitute a reason for cancellation or termination of this Agreement by Company unless such change has been previously approved in writing by Company. *Such approval to not be unreasonably withheld* NJ

7.2     This contract may be terminated for material breach of any obligation, representation, warranty, or covenant in this Agreement, as well as for the following reasons and in the following manner:

    (a)     By the mutual written termination of the parties; *to make no best efforts* NJ

    (b)     By the Company if the Distributor fails to meet the minimum sales each year defined as 12,000 raw cases in 2006, 14,000 raw cases in 2007 and 16,000 raw cases in 2008.

    (c)     Notwithstanding anything to the contrary herein, in the event the Distributor shall discontinue its operations or fail to distribute or sell the Beverages for a period of fifteen (15) days, the Distributor shall be deemed to have abandoned its rights under this Agreement and Company shall have the option to cancel this Agreement on fifteen (15) days' written notice;

    (d)     Failure of the Distributor to pay to the Company approved source the price or prices of the Beverages.

## MISCELLANEOUS

*→ See mcct 7.3* *Such consent to not be unreasonably withheld* NJ

8.0     This Agreement is of a personal nature and may not be assigned, transferred, conveyed, or pledged by the Distributor directly or indirectly by operation of law or otherwise without the written consent of Company first obtained. In the event of assignment with such written consent, the assignee of assignees of the Agreement through such assignment shall be known as "Distributor" under the terms of this Agreement, and all the provisions hereof shall accrue to and be binding upon such assignee or assignees. This Agreement is fully and freely assignable by Company without the consent of Distributor.

8.1     If any part of this Agreement is not, or ceases to be, in conformity with the laws of the jurisdiction in which the Territory is located, and as a result thereof any one of the essential stipulations herein cannot be legally performed, then Company or the Distributor shall have the right to terminate this Agreement or the parties may agree to modify this Agreement to conform with said laws of the jurisdiction.

8.2     The failure by Company to enforce at any time or for any period of time any one or more of the terms or conditions of this Agreement shall not constitute a waiver of such terms or conditions or of Company's right thereafter to enforce each and every term and condition of this Agreement.

8.3     Neither party to this Agreement shall be held responsible for failure to perform any obligation imposed hereunder, where such failure is caused by Act of God, war strike, or other cause whatsoever beyond the control of such party.

8.4     The Distributor and Company agree that all disputes arising under or relating to this *or other means available under the laws of the state of Illinois* NJ Agreement, if not otherwise resolved by mutual agreement of the parties, shall be settled by arbitration. One or more arbitrators appointed in accordance with the Rules shall conduct such arbitration in accordance with the Commercial Arbitration Rules of The North American Arbitration Association. Judgment upon any award rendered may be entered in any court having jurisdiction over the award or over either of the parties to

NJs

MONARCH BEVERAGE COMPANY
AGREEMENT WITH CENTRAL BEVERAGE COMPANY
DATED FEBRUARY 6, 2006

INSERT

7.3. The Company may terminate this Agreement for any other reason than those listed in sections 7.0, 7.1 or 7.2 or for no reason at all, upon 90 days' written notice to the Distributor, or by virtue of non-renewal under section 1.4. Such termination will be effective as of the expiration of such 90 day period. In lieu of any other claim Distributor may have with respect to such termination by the Company, Distributor shall be entitled to receive compensation for each case sold by Distributor during the twelve month period ending on the date termination of this Agreement becomes effective. In the event this Agreement has been in effect for less than 12 months, the cases sold for purposes of compensation will be annualized. This per case compensation shall be a minimum two times per case gross margin.    In the event this Agreement is terminated within 12 months of the sale or assignment of the Company's rights under this Agreement, this amount shall be doubled. The payment of such compensation shall be deemed to be in full and complete satisfaction of all claims and causes of action Distributor may have relating in any way to the termination hereof.



this Agreement, or application may be made to such court for a judicial acceptance of such award and an order of enforcement, as the case may be. Any such arbitration proceedings shall be conducted in the English language in ~~Atlanta, Georgia, United States of America.~~ *The state of Illinois* (M)

8.5    This Agreement shall be deemed to be a ~~contract~~ made under the laws of the State of Georgia, U.S.A., and for all purposes shall be construed in accordance with said laws.

8.6    Notices shall be considered effective when faxed or if mailed, certified or registered mail, return receipt requested, postage prepaid, to Company or Distributor at the following addresses on the date noted as the delivery or attempted delivery date:

| Company: | Distributor: |
|---|---|
| The Monarch Beverage Company, Inc. | Central Beverage Company |
| The Monarch Tower – Suite 1450 | 2601 South 25th Ave. |
| 3424 Peachtree Road, NE | Broadview, Illinois 60155 |
| Atlanta, Georgia 30326 | Attention: Mark T. Muench, CEO |
| Attention: Jacques Bombal | Phone: 708-344-6602 |
| Fax: 404-262-4001 | |

8.7    This instrument, including all of the attached Appendices and Exhibits, sets forth the entire Agreement between the parties, superseding any other agreement to the purchase, sale and distribution of the Beverages by the Distributor and any waiver, alteration or modification of this Agreement shall not be binding unless the same shall be in writing and signed by a duly authorized officer of the Distributor and by a duly authorized officer of Company.

IN WITNESS WHEREOF, the parties hereto, respectively, have caused the Agreement to be executed and sealed on their behalf by their duly authorized representatives effective as of the date herein above first written.

| THE MONARCH BEVERAGE COMPANY, INC. (Company) | Central Beverage Company (Distributor) |
|---|---|
| By: Jacques Bombal | By: |
| Title: CEO | Title: PRESIDENT |

(M)  6

## APPENDIX A
## TRADEMARKS

Rush! Energy ™
Rush! Energy Lite ™

Moxie Energy ™

ALL SPORT - ALL LINES

DADS - ALL LINES & FLAVORS

7

**APPENDIX B**
**PACKAGE SIZES**

**All Packages**

8

**APPENDIX C**
**TERRITORY**

In the state of Illinois, the counties of: ─SEE ATTACHED

9

SCHEDULE "C"
TERRITORY

Distributor has the exclusive distribution rights in the state of Illinois for the following territory:

CENTRAL TERRITORY

In the State of Illinois

Starting at the junction of Lake Michigan and Belmont Ave.  West on Belmont Ave. to Cicero Ave.  Cicero Ave. south to North Ave.  North Avenue west to Route 45. Route 45 north to Irving Park Road.  Irving Park Road west to Route 59.  Route 59 south to Will/DuPage border.  East on Will/DuPage border to I-355.  South on I-355 to I-55.  East along I-55 to Route 83.  South on Route 83 to Bell Road. South on Bell Road to the Cook/Will County line.  Follow the Cook/Will County line east and south to Steger Road.  East on Steger Road to the Illinois/Indiana state line:  North on the Illinois/Indiana state line to Lake Michigan.  North along the border of Lake Michigan to Belmont Ave., the point of origin.

SUPPLIER

By: JACQUES BOMBAZ

Title: CEO

DISTRIBUTOR

By: DONNA L SPAGNOLA

Title: PRESIDENT

**APPENDIX D**
**NATIONAL ACCOUNTS**

**WALGREEN'S**

# EXHIBIT B

LEXSEE 2003 US DIST LEXIS 10998

**CITY OF NAPERVILLE, Plaintiff, v. COMCAST OF ILLINOIS/WEST VIRGINIA, LLC, Defendant.**

**Case No. 03 C 1512**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2003 U.S. Dist. LEXIS 10998*

**June 26, 2003, Decided**
**June 30, 2003, Docketed**

**DISPOSITION:**     [*1] City of Naperville's Motion to Remand denied.

**COUNSEL:** For City of Naperville, PLAINTIFF: Patricia Johnson Lord, Howard P Levine, Daniel Patrick Blondin, Paul L Stephanides, City of Naperville, Naperville, IL USA.

For Comcast of Illinois/West Virginia, LLC, DEFENDANT: Robert G Scott, Jr, Geoffrey C Cook, Cole, Raywid & Braverman, Washington, DC USA.

For Comcast of Illinois/West Virginia, LLC, DEFENDANT: Michael Raymond Labarge, Deborah Jennifer Spector, Labarge, Campbell & Lyon, LLC, Chicago, IL USA.

**JUDGES:** John W. Darrah, Judge, United States District Court.

**OPINION BY:** John W. Darrah

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, the City of Naperville ("the City"), originally filed a single-count complaint in the Circuit Court for the Eighteenth Judicial Circuit, Dupage County, Illinois, against Defendant, Comcast of Illinois/West Virginia, LLC ("Comcast"). Comcast removed the matter to this Court pursuant to *28 U.S.C. §§ 1332and 1441* and

a Stipulation of Dismissal in an earlier federal case, *City of Naperville v. Cable TV Fund 14-A, 1997 U.S. Dist. LEXIS 7336, No. 96 C 5962*. The City moves, pursuant to *28 U.S.C. § 1447*, to remand. For the reasons that [*2] follow, the City's Motion to Remand is denied.

**LEGAL STANDARD**

In considering a motion to remand, the court's focus is limited to its authority to hear the case pursuant to the removal statute, *28 U.S.C. § 1441*. *American Inmate Phone Sys. Inc. v. U.S. Sprint Communications Co., 787 F. Supp. 852, 854 (N.D. Ill. 1992)*. Whether removal was proper is determined from the record as a whole. *Kennedy v. Commercial Carriers, Inc., 739 F. Supp. 406, 409 (N.D. Ill. 1990)*. "The party seeking a federal forum has the burden of establishing jurisdiction." *Wellness Community-National v. Wellness House, 70 F.3d 46, 49 (7th Cir. 1995)*. If the Court determines that it does not have jurisdiction, then it must remand the case to state court. *Commonwealth Edison Co. v. Westinghouse Elec. Co., 759 F. Supp. 449, 452 (N.D. Ill. 1991)*.

**BACKGROUND**

The record supports the following summary of the relevant facts.

The City entered into a franchise agreement with a cable company. Subsequently, Comcast succeeded to that cable company's franchise with the City. Comcast agreed, in a "Change of Control [*3] Agreement", to be bound by all the duties, commitments, and obligations contained in the City's franchise agreement with Comcast's

2003 U.S. Dist. LEXIS 10998, *3

predecessor. The franchise agreement provided, in pertinent part:

> Franchisee will continue to provide studio and office space to Naperville Community TV ("NCTV") as a part of the Franchisee's existing lease; and maintenance on NCTV's mobile production van and studio equipment all at no charge. Should Franchisee, either in its sole discretion or by other reason, move its offices from its current location to a location within 5 miles of the corporate City limits, Franchisee shall continue to provide office and studio space to NCTV free of charge at such location. Should NCTV choose not to relocate to such new location, Franchisee will be relieved of the specific obligations stated in this paragraph only.

> If Franchisee moves its offices to a location beyond 5 miles of the corporate City limits and NCTV chooses not to relocate with Franchisee, then Franchisee agrees to compensate NCTV in the amount of the then rental value of NCTV's current office and studio space located on 5th Avenue in City for a period of 7 and one-half years or the remainder [*4] of the Franchise term, whichever is less. Any such compensation shall be payable by Franchisee in monthly installments.

(Compl. Ex. A, Franchise Agreement P 9.2.)

NCTV, the City's local community access television provider, maintains its offices and studios at Comcast's West 5th Avenue offices. Comcast informed the City that it would no longer make rent payments for NCTV's studio and office space beginning January 1, 2003, and that it would no longer provide operating support for NCTV unless it could offset those charges against the franchise fees as allowed under the Cable Act, *47 U.S.C. § 542*.

Pursuant to the franchise agreement, the City sent Comcast a letter, demanding that Comcast comply with paragraph 9.2 of the franchise agreement. Comcast reiterated its position that NCTV's rent would be deducted from the franchise fees.

In 2002, NCTV's rent for its studio and office space was $ 92,912.12. Based upon NCTV's rent for 2002, NCTV's rent for the next seven-and-one-half years will be $ 696,840.90.

The City filed a single-count complaint in the Circuit Court of DuPage County, seeking a declaration that Comcast breached the franchise agreement and [*5] is estopped from not paying rent to NCTV and an order that Comcast pay NCTV's rent for the next seven-and-one-half years and the City's costs. Comcast removed that action to this Court on February 28, 2003.

In the motion to remand, the City challenges the three grounds set out by Comcast in the Notice of Removal: (1) the complaint presents a claim that arises out of matters agreed to and resolved in a Stipulation of Dismissal of an earlier federal case, *1997 U.S. Dist. LEXIS 7336, No. 96 C 5962*; (2) the City's request for a declaratory ruling that Comcast may not offset payments in support of NCTV against the franchise fee cap is an issue of federal law that is governed by Section 622 of the Communications Act of 1934, *47 U.S.C. § 542*; and (3) the Court has jurisdiction over the City's complaint under *28 U.S.C. § 1332*. Because jurisdiction exists pursuant to *28 U.S.C. § 1332*, the first two bases of removal are not addressed.

## DISCUSSION

*Section 1441* provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district [*6] court of the United States for the district and division embracing the place where such action is pending." *28 U.S.C. § 1441(a)*. *Section 1332* provides that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000 . . . and is between . . . citizens of different States". *28 U.S.C. § 1332(a)(1)*.

It is clear that the amount in controversy requirement has been met. The complaint alleges that NCTV's rent for the next seven-and-one-half years will be $ 696,840.90. The City argues that the instant matter should be remanded because Comcast has not established that it is a citizen of a different state.

2003 U.S. Dist. LEXIS 10998, *6

However, the City contends that, contrary to Comcast's statement that it is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania, no support for this statement has been provided. For removal to be proper, Comcast must establish that both its state of incorporation and principal place of business are in states other than Illinois. In support, the City cites *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 920 (5th Cir. 2001). [*7]

However, *Howery* is inapposite to the instant case. Comcast is a limited liability company ("LLC"). "The citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members." *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). Comcast is a Delaware limited liability company with only one member, Comcast Cable Holdings, LLC. Comcast Cable Holdings, LLC is a Delaware limited liability company with only one member, Comcast Cable Communications Holdings, Inc. ("CCCH"). CCCH is a Delaware corporation whose sole shareholder is Comcast Corporation. CCCH is headquartered in Philadelphia, Pennsylvania. (Def.'s Opp'n Pl.'s Mot. Remand Ex.C, Heller Decl. PP 3-8.) Comcast's members are Delaware limited liability companies and a Delaware corporation that is headquartered in Philadelphia, Pennsylvania. (Heller Decl. PP 3-8.) Under § 1332(c)(1), a corporation

is a citizen of any state by which it has been incorporated and where it has its principal place of business. Under the "nerve center" test, "a corporation has a single place of business where its executive headquarters are located." *Metro. Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1223 (7th Cir. 1991). [*8] CCCH's principal place of business is in Philadephia, where its headquarters are located and where CCCH's principal executives have their offices, its board meets, and its corporate records are maintained. (*See* Heller Decl. P 8.) Thus, Comcast is a citizen of Delaware and Pennsylvania. The City is an Illinois municipality. There is complete diversity of citizenship, and removal is proper on this basis. Therefore, the City's Motion to Remand is denied.

**CONCLUSION**

For the reasons stated herein, the City of Naperville's Motion to Remand is denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge

United States District Court

Date: June 26, 2003