UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAMADO, INC., d/b/a CENTRAL BEVERAGE COMPANY, an Illinois corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 08 C 1146 |
| | ) | Judge Dow |
| v. | ) ) | Magistrate Judge Ashman |
| HEDINGER BRANDS, LLC, an Indiana limited liability company, | ) ) ) | Removed from the Circuit Court of Cook County, Illinois, Law Division |
| Defendant. | ) | Case No. 08 L 000646 |

## DEFENDANT HEDINGER BRANDS' ANSWER AND COUNTERCLAIM

Defendant, Hedinger Brands, LLC ("Hedinger Brands"), by its attorneys, Barnes & Thornburg LLP, submits the following Answer, Affirmative Defenses and Counterclaim to the Complaint of the Plaintiff, Pamado, Inc., d/b/a Central Beverage Company ("Central Beverage"):

### Introduction

1.      Hedinger Brands, as assignee of a Trademark License and Distribution Agreement ("Agreement") between Central Beverage and The Monarch Beverage Company, Inc. ("Monarch"), breached the Agreement by failing to provide Central Beverage with the exclusive right to distribute all product lines and flavors of Dad's Root Beer ("Dad's") products in the Chicago area. More particularly, Hedinger [Brands] permitted one or more entities to sell Dad's products to Jewel/Osco, one of the largest retailers in Central Beverage's exclusive territory. As a consequence, Central Beverage has been damaged in an amount in excess of $60,000.

**ANSWER:**    Hedinger Brands admits that it is an assignee of the rights and obligations of The Monarch Beverage Company, Inc. ("Monarch") in a Trademark License and Distribution Agreement ("Agreement") between Monarch and Central Beverage.    Unless specifically admitted, Hedinger Brands denies the allegations of paragraph 1 of the Complaint.

## The Parties

2.    Central Beverage is, and at all relevant times was, an Illinois corporation with its principal place of business in the Village of Broadview, Cook County, Illinois.

**ANSWER:**    Hedinger Brands admits the allegations of paragraph 2 of the Complaint.

3.    Hedinger [Brands], upon information and belief, is an Indiana limited liability company with its principal place of business in Jasper, Indiana.

**ANSWER:**    Hedinger Brands admits the allegations of paragraph 3 of the Complaint.

## Venue and Jurisdiction

4.    This Court has jurisdiction over the parties pursuant to 735 ILCS 5/2-209 because this cause of action arises out of the transaction of business in the State of Illinois. This Court additionally has jurisdiction because the Agreement provides for jurisdiction in the State of Illinois.

**ANSWER:**    Hedinger Brands admits the allegations of paragraph 4 of the Complaint but further contends that this lawsuit has been properly removed to the United States District Court for the Northern District of Illinois.

5.    Venue is proper in this Court pursuant to 735 ILCS 5/2-101 because the transactions out of which this cause of action arose took place in Cook County, Illinois.

**ANSWER:**    Hedinger Brands admits the allegations of paragraph 5 of the Complaint but further contends that this lawsuit has been properly removed to the United States District Court for the Northern District of Illinois.

## Common Allegations

6.    On February 6, 2006, Central Beverage entered into the Agreement with Monarch. Pursuant to the Agreement, Monarch granted to Central Beverage the exclusive right to distribute, *inter alia,* all lines and flavors of the Dad's products in a defined territory, which includes a large portion of the Chicago area. A true and accurate copy of the Agreement is attached hereto as Exhibit A.

**ANSWER:**    Hedinger Brands admits that on or about February 6, 2006, Central Beverage entered into the Agreement with Monarch.  Hedinger Brands admits that Exhibit A to the Complaint is a true and accurate copy of the Agreement.  Hedinger Brands admits Central Beverage's allegations concerning the terms of the Agreement to the extent that those allegations are consistent with the language of the Agreement. Unless specifically admitted, Hedinger Brands denies the allegations of Paragraph 6 of the Complaint.

7.    In or around January 2007, Monarch sold, transferred and assigned to Hedinger [Brands] all rights to the Dad's products. The Agreement between Monarch and Central Beverage was one of the agreements assigned by Monarch to Hedinger [Brands].

**ANSWER:**    Hedinger Brands admits the allegations of paragraph 7 of the Complaint.

8.    There is little question the Agreement was assigned. Section 8.0 of the Agreement unequivocally allowed Monarch to fully and freely assign all rights pursuant to the Agreement without the consent of Central Beverage. On March 7, 2007, Monarch sent a letter to Central

Beverage confirming its assignment of the Agreement. Also, Hedinger [Brands] has never provided evidence that the Agreement was not assigned.

**ANSWER:**    Hedinger Brands admits that the rights and interests of Monarch in the Agreement were assigned to Hedinger Brands. Hedinger admits that on or about March 7, 2007, Monarch sent a letter to Central Beverage noting the assignment of the Agreement. Unless specifically admitted, Hedinger Brands denies the allegations of paragraph 8 of the Complaint.

9.    After the assignment of the Agreement, Central Beverage continued to purchase Dad's products and distribute them within its exclusive territory. However, notwithstanding the exclusive Agreement and Central Beverage's performance of its obligations pursuant to the Agreement, in or around October 2007 Central Beverage discovered that a different company was selling Dad's products directly to Jewel/Osco stores located in Central Beverage's territory (the "Direct Sales"). The Direct Sales violate the exclusivity provision of the Agreement.

**ANSWER:**    Hedinger Brands admits that after assignment of the Agreement, Central Beverage continued to purchase Dad's products and distribute them in its territory. Unless specifically admitted, Hedinger Brands denies the allegations of paragraph 9 of the Complaint.

10.    Upon information and belief, more than 20,000 cases of Dad's products (in liters) have been sold to Jewel/Osco in violation of the Agreement. Central Beverage generates a profit of approximately $2.60 per case of liter products. As such, the Direct Sales resulted in Central Beverage losing at least $52,000.

**ANSWER:**    Hedinger Brands denies the allegations of paragraph 10 of the Complaint.

11.    Moreover, on November 21, 2007, Hedinger [Brands] gave notice to Central Beverage that it was terminating the parties' relationship. In the notice, Hedinger [Brands] denied it was bound to the Agreement and, assuming it was bound to the Agreement, Hedinger

[Brands] claimed that Central Beverage was being terminated for cause because it purportedly failed to honor its contractual obligations by failing to (a) sell sufficient quantity of product and report sales, and (b) timely pay for a shipment of product.

**ANSWER:**     Hedinger Brands admits that on or about November 21, 2007, it gave notice to Central Beverage that it was terminating the parties' relationship. Hedinger Brands admits Central Beverage's allegations concerning the terms of that letter to the extent that those allegations are consistent with the language of the letter. Unless specifically admitted, Hedinger Brands denies the allegations of paragraph 11 of the Complaint.

12.     The purported termination was not for cause. Central Beverage would have sold sufficient quantities of product had Hedinger [Brands] not permitted a competitor of Central Beverage to sell to Jewel/Osco in Central Beverage's exclusive territory. Further, Hedinger [Brands] failed to take into consideration that (a) Central Beverage was not obligated by the Agreement to actually meet or exceed the sales goals set forth in the contract, but only to use its best efforts to reach those goals, and (b) the goals set forth in the Agreement took into consideration products that were not sold to Hedinger [Brands]. In regard to payment, Central Beverage offset its obligation to pay for product against the lost profits it suffered as a consequence of Hedinger [Brands]' breach of the Agreement.

**ANSWER:**     Hedinger Brands denies the allegations of paragraph 12 of the Complaint.

13.     Paragraph 7.3 of the Agreement provides an assignee the Agreement that terminates the Agreement within twelve months of the sale or assignment of Monarch's rights under the Agreement shall pay to Central Beverage two times per case gross margin earned by Central Beverage during the preceding twelve months. Hedinger [Brands], as assignee of the Agreement, terminated the Agreement within twelve months of its assignment.

**ANSWER:**    Hedinger Brands admits Central Beverage's allegations concerning the terms of the Agreement to the extent that those allegations are consistent with the language of the Agreement but denies any liability under paragraph 7.3 of the Agreement.  Unless specifically admitted, Hedinger Brands denies the allegations of paragraph 13 of the Complaint.

14.    Central Beverage would have sold more than 22,000 cases of Dad's product during the 12 month period preceding Hedinger [Brands]' termination if not for Hedinger [Brands]' breach. Accordingly, in addition to the lost profits Hedinger [Brands] owes to Central Beverage, Hedinger [Brands] is liable to Central Beverage in the additional amount of more than $119,000, which represents two times Central Beverage's gross margin on all cases Central Beverage should have sold during the 12 month period preceding the termination if Hedinger [Brands] had not breached the Agreement.

**ANSWER:**    Hedinger Brands denies the allegations of paragraph 14 of the Complaint.

## AFFIRMATIVE DEFENSES

1.    Some or all of Central Beverage's claims are barred by its first material breach of the Agreement.

2.    Some or all of Central Beverage's claims are barred by unclean hands.

3.    Some or all of the Central Beverage's claims are barred by its failure to mitigate damages.

4.    Hedinger Brands reserves the right to add affirmative defenses based on facts and information disclosed during the course of discovery.

## COUNTERCLAIM

1.     Hedinger Brands is an Indiana limited liability company with its principal place of business in Jasper, Indiana.

2.     Hedinger's sole member is Keith Hedinger.  Mr. Hedinger is a citizen and resident of Indiana who resides in Jasper, Indiana.

3.     Central Beverage is a corporation organized and existing under the laws of the State of Illinois with its principal place of business in the Village of Broadview, Cook County, Illinois.

4.     The amount at issue in this counterclaim is in excess of $75,000, exclusive of costs and attorneys' fees.

5.     This Court has personal jurisdiction over the parties to this counterclaim.

6.     This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1332 and 1367.

7.     On or about February 6, 2006, Monarch Beverage Company, Inc. ("Monarch") and Central Beverage entered into a Trademark License and Distributor's Agreement ("Agreement"), a true and accurate copy of which has been attached to the Complaint as Exhibit A.

8.     The rights and obligations of Monarch under that Agreement have been assigned to Hedinger Brands.

9.     Under paragraph 5.2 of the Agreement, Central Beverage was obligated to use its best efforts to promote, develop and service the market for the Beverages (as that term was defined in the Agreement) throughout the Territory (as that term was defined in the Agreement) and, by prompt delivery, adequate service to customers, and otherwise, build and maintain a

reasonable volume of patronage, no less that the minimum requirements defined in paragraph 7.2(b) for the Beverages.

10.     Under paragraph 7.2(d) of the Agreement, Central Beverage could be terminated by Monarch or Monarch's successor in interest if Central Beverage failed "to pay to the Company approved source the price or prices of the Beverages."

11.     Central Beverage breached its obligations under the Agreement by, *inter alia*, (a) failing to exercise its best efforts to promote, develop and service the market for the Beverages throughout the Territory; (b) failing to meet the minimum requirements for sales defined in paragraph 7.2(b) of the Agreement; and (c) failing to pay to the Company approved source the price or prices for Beverages.

12.     These breaches were material.

13.     Hedinger Brands has been harmed by Central Beverage's breaches of the Agreement.

WHEREFORE, Hedinger Brands prays that:

1.     Central Beverage take nothing by way of its Complaint;

2.     Judgment be entered in favor of Hedinger Brands on its Counterclaim and money damages be awarded in an amount to be determined at trial;

3.     Hedinger Brands be awarded its costs of this action; and

4.     The Court grant Hedinger Brands such other and further relief as it may deem just and proper under the circumstances.

Respectfully submitted,

HEDINGER BRANDS BRANDS, LLC

By:    s/Jonathan P. Froemel
       Jonathan P. Froemel
       James E. Michel
       BARNES & THORNBURG LLP
       One N. Wacker Drive, Suite 4400
       Chicago, IL  60606
       Telephone:  (312) 357-1313
       Facsimile:  (312) 759-5646

       Dwight D. Lueck
       BARNES & THORNBURG
       11 South Meridian Street
       Indianapolis, IN  46204
       Telephone:  (317) 236-1313
       Facsimile:  (317) 231-7433

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the foregoing was filed electronically this 3rd day of March, 2008.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

> Richard A. Del Giudice, Esq.
> Earl E. Farkas, Esq.
> David N. Pruitt, Esq.
> GOZDECKI & DEL GIUDICE, LLP
> 221 North LaSalle Street
> Suite 2200
> Chicago, IL  60601

> s/ Jonathan P. Froemel
> Jonathan P. Froemel

INDS02 DDL 956245v1