UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMADO, INC., d/b/a CENTRAL BEVERAGE COMPANY, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>HEDINGER BRANDS, LLC, an Indiana limited liability company,<br><br>Defendant. | Case No. 08 C 1146<br><br>Judge Dow<br><br>Magistrate Judge Ashman |

**HEDINGER BRANDS' MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

I. **INTRODUCTION.**

This lawsuit concerns the distribution of DAD'S® root beer. Defendant Hedinger Brands, LLC ("Hedinger Brands") is the owner of the proprietary formulae, trademark and distribution rights in DAD'S® root beer. The Dad's Root Beer Company, LLC is licensed by Hedinger Brands to sell and market DAD'S® root beer products. From approximately March 15, 2006 to November 21, 2007, Plaintiff Pamado, Inc. d/b/a Central Beverage Company ("Central Beverage") was a distributor of DAD'S® products in a territory that includes portions of Chicago. On November 21, 2007, Hedinger Brands terminated Central Beverage because Central Beverage refused to pay a third party supplier for products that supplier had delivered to Central Beverage and for poor sales performance. Central Beverage responded with this lawsuit, contending that Hedinger Brands had breached the agreement between the parties by selling products to the Jewel/Osco chain in Central Beverage's territory and contending that Hedinger

Brands was required to pay post-termination compensation under the agreement between the parties.

As set forth in greater detail below, both of Central Beverage's claims fail as a matter of law based on straightforward interpretation of the agreement at issue. The agreement between the parties explicitly allowed Hedinger Brands to terminate the relationship between the parties if Central Beverage failed to pay a supplier. In addition, the agreement specifically provided that Hedinger Brands reserved the right to sell to National Account Customers such as Jewel/Osco in the territory assigned to Central Beverage. For these reasons, summary judgment should be granted to Hedinger Brands on all the claims raised by Central Beverage.

## II.   FACTUAL BACKGROUND.

Hedinger Brands incorporates by reference its Local Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.

## III.   ARGUMENT.

Central Beverage asserts two claims against Hedinger Brands. First, Central Beverage alleges that it is owed approximately $119,000 under Section 7.3 of the Agreement because it was not terminated for cause. (Complaint, ¶¶ 12-14). Second, Central Beverage alleges that it is owed approximately $52,000 because, during the term of the Agreement, Hedinger Brands allowed DAD'S® branded products to be sold to Jewel/Osco stores in the Territory assigned to Central Beverage. (Complaint, ¶¶ 9-10).

Both of Central Beverage's claims' fail as a matter of law. Central Beverage's claim for post-termination compensation fails as a matter of law because Central Beverage was terminated for cause. As a result, no post-termination compensation is due.

2

Central Beverage's second claim fails because, as a matter of law, the Agreement allowed Hedinger Brands to sell products to National Account Customers such as Jewel/Osco in the Territory assigned to Central Beverage without breaching the Agreement. For these reasons, summary judgment should be entered against Central Beverage on all of its claims.

A.  <u>Summary Judgment Standard.</u>

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that it must "by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." Where the non-moving party fails to make a showing sufficient to establish an essential element of its claim, summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Contract interpretation is particularly suited to disposition by summary judgment." *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 705 (7th Cir. 1995). Central Beverage cannot present sufficient evidence to support its breach of contract claims because those claims fail based on the plain language of the Agreement.

B.  <u>Central Beverage's Claim for Post-Termination Benefits Fails as a Matter of Law.</u>

Central Beverage claims that it is entitled to post-termination compensation under Paragraph 7.3 of the Agreement because it was, allegedly, terminated without cause:

> [A]s stated in paragraphs 13 and 14 of the Complaint, pursuant to paragraph 7.3 of the Agreement, Defendant is liable to Central Beverage for its termination of the Agreement without cause in the amount of at least $119,000. . . .

3

(Disclosure Statement, attached as Exhibit D to Hedinger Decl., which is attached as Exhibit 1 to Hedinger Brands' Local Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Statement of Undisputed Material Facts")). Paragraph 7.3 of the Agreement provides that:

> 7.3   The Company may terminate this Agreement for any other reason than those listed in sections 7.0, 7.1 or 7.2 or for no reason at all, upon 90 days' written notice to the Distributor, or by virtue of non-renewal under section 1.4. Such termination will be effective as of the expiration of such 90 day period. In lieu of any other claim Distributor may have with respect to such termination by the Company, Distributor shall be entitled to receive compensation for each case sold by Distributor during the twelve month period ending on the date termination of this Agreement becomes effective. . . .

However, as discussed below, Central Beverage was terminated for cause (*i.e.*, pursuant to Paragraphs 7.0, 7.1 and/or 7.2). Thus, no post-termination compensation is owed.

Paragraph 7.2(d) of the Agreement specifically allows Hedinger Brands to terminate the Agreement for "[f]ailure of the Distributor to pay to the Company approved source the price or prices of the Beverages." This only makes sense. A company such as Hedinger Brands should not be forced to continue a distributorship relationship with a distributor who is not paying its bills.

There is no dispute that RCB was a "Company approved source" for DAD'S® branded product, and that Central Beverage failed to pay RCB for the product that RCB delivered to Central Beverage on October 10, 2007. As a result, Hedinger Brands terminated the Agreement for cause and pursuant to Paragraph 7.2, rather than pursuant to the additional bases for termination identified in Paragraph 7.3. Thus, Central Beverage's claim has no merit and should be dismissed on summary judgment.

Central Beverage contends that it was not obligated to pay a third party vendor for the DAD'S® product it received because it was entitled to "offset its obligation to pay for product

4

against the lost profits it suffered as a consequence of Hedinger's breach of the Agreement." (Complaint, ¶ 12). This argument fails, as a matter of law.

A buyer must pay for the goods that it accepts. *See To-Am Equip. Co., Inc. v. Mitsubishi Caterpillar Forklift Am.*, 913 F. Supp. 1148, 1155 (N.D. Ill. 1995). Set-off is not applicable unless the damages deducted by the buyer from the price due result from breach of the *same* contract. *See id.* "Distributorship agreements and the purchase orders that arise under them are different contracts," therefore, "the price of the goods that a buyer accepts pursuant to a purchase order is not susceptible to set-off against damages the buyer sustains as a result of a seller's alleged breach of a related distributorship agreement." *ECHO*, 52 F.3d at 706 (7th Cir. 1995) (citing *Schieffelin & Co. v. Valley Liquors, Inc.*, 823 F.2d 1064, 1067-68 (7th Cir. 1987)). This is well-settled. *See, e.g., Shintom Am., Inc. v. Car Tels., Inc.*, 45 F.3d 1107, 1109 (7th Cir. 1995); *Soo Line R.R. Co. v. Escanaba & Lake Superior R.R. Co.*, 840 F.2d 546, 551 (7th Cir. 1988); *S.A.M. Elecs., Inc. v. Osaraprasop*, 39 F. Supp. 2d 1074, 1086 (N.D. Ill. 1999); *To-Am*, 913 F. Supp. at 1155; *Berdex Int'l, Inc. v. Milfico Prepared Foods, Inc.*, 258 Ill. App. 3d 738, 741 (Ill. App. 1994).

In this case, the involvement of a third party vendor makes it even clearer that the contracts at issue are different and not susceptible to set-off. The distributorship agreement is between Central Beverage and Hedinger Brands, but Central Beverage purchased beverages from and refused to pay RCB. To allow Central Beverage to refuse to pay a debt owed to RCB based upon Hedinger Brands' alleged breach of the distributorship agreement would be akin to allowing someone with a lemon law claim against GM to take and refuse to pay for a car from a GM dealership. These types of actions are unacceptable attempts at vigilante justice, not set-off. *Cf. Soo Line*, 840 F.2d at 551 ("Set-offs are permitted only when the debts are 'mutual', and

debts arising at different times out of different circumstances are not mutual. Indeed, self help in the business world--where one party seizes assets that belong to another, in order to improve its bargaining position concerning a genuinely dispute sum--is presumptively tortious.").

For all of these reasons, Hedinger Brands' termination of Central Beverage was proper under Paragraph 7.2 of the Agreement and, as a matter of law, Central Beverage is owed no post-termination compensation as a result of that termination.

C.   <u>Central Beverage's Claim for Damages Based on Sales to Jewel/Osco Fails as a Matter of Law.</u>

Central Beverage's second claim is based on allegations that Hedinger Brands breached the Agreement by selling products to Jewel/Osco, in the Territory assigned to Central Beverage, during the term of the Agreement. Liability for this claim depends upon the interpretation of Paragraph 1.0(a) of the Agreement, which provides:

> 1.0   Company hereby grants the exclusive right, except as set forth below to Distributor, to distribute and sell only in the restricted territory, defined and described in Appendix "C" (the "Territory"), only the package sizes listed in Appendix "B", and only the beverages listed in Appendix "A" (hereinafter referred to as the "Beverages").
>
> (a)   The Distributor's right to sell and distribute Beverages in the Territory shall be exclusive except that the Company reserves the right to sell Beverages to chain or multiple outlets with operations in the Territory and one or more operations outside the Territory (hereinafter called the "National Account Customers") for an invasion fee of $1.00 per case for the accounts listed in Appendix D.

There is no dispute that Paragraph 1.0(a) allows Hedinger Brands to make sales to National Account Customers in the Territory during the term of the Agreement. There is also no dispute that Jewel/Osco is a National Account Customer -- it has chain or multiple outlets with operations in the Territory and one or more operations outside the Territory. (Nootbaar Decl. ¶ 8, attached as Exhibit 2 to Hedinger Brands' Statement of Undisputed Material Facts.)

The dispute revolves around the phrase "for an invasion fee of $1.00 per case for the accounts listed in Appendix D." Central Beverage contends that any sales to Jewel/Osco in the Territory "should have been through Central or if not, an invasion fee is owed to Central." (Spagnola email of 10/11/07, attached to Ex. 1, Hedinger Decl. as Ex. B). This misinterprets the plain language of the Agreement. The $1.00 per case invasion fee is owed only for sales made to "the accounts listed in Appendix D." Jewel/Osco was never listed in Appendix D. The only account listed in that appendix was Walgreen's. (See Ex. 1, Hedinger Decl., Ex. A, Agreement, Appendix D). Jewel/Osco could have been listed on Appendix D in 2006, when the Agreement was signed. It was not. It could have been added by an amendment in writing (pursuant to Paragraph 8.7 of the Agreement) but it was not. As a result, no $1.00 per case invasion fee is owed for sales made to Jewel/Osco as a matter of law.

Central Beverage goes one step beyond alleging that an invasion fee must be paid. It contends that if a National Account Customer is not listed in Appendix D, then the sale "should have been made through Central." (Spagnola email, *supra*). This contention is also wrong as a matter of law. Under Paragraph 1.0(a), Hedinger Brands "reserve[d] the right to sell Beverages to chain or multiple outlets with operations in the Territory and one or more operations outside the Territory (hereinafter called the "National Account Customers")." The consideration given for reserving that right was the payment "of an invasion fee of $1.00 per case for the accounts listed in Appendix D."

To reach the contract interpretation proffered by Central Beverage, one would need to rewrite Paragraph 1.0(a) to state:

> The Distributor's right to sell and distribute Beverages in the Territory shall be exclusive except that the Company reserves the right to sell Beverages to chain or multiple outlets with operations in the Territory and one or more operations outside the Territory (hereinafter called the "National Account Customers") **but**

>**only if that National Account Customer is listed in Appendix D and Company pays** ~~for~~ an invasion fee of $1.00 per case for the accounts listed in Appendix D.

(Additions in bold, deletions crossed out).

Such a radical rewriting of the Agreement violates basic principles of contract interpretation. "In construing provisions of a contract the court's primary objective is to give effect to the intent of the parties at the time the contract was made. Such intentions are to be ascertained from the language of the contract." *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344, 736 N.E.2d 145, 150 (1st Dist. 2000) (citations omitted).[1] Courts will not rewrite contracts to suit one of the parties. *Owens*, 316 Ill. App. 3d at 349-50, 736 N.E.2d at 154; *Klemp v. Hergott Group, Inc.*, 267 Ill. App. 3d 574, 581, 641 N.E.2d 957, 962 (1st Dist. 1994); *see also, Nat'l Bank of Bloomington v. W. Constr. Co.*, 41 Ill. App. 3d 686, 689-90, 355 N.E.2d 43, 47 (4th Dist. 1976) ("[C]ourts will not insert terms about which the agreement is silent."). Rather, courts will apply the "plain language" used in the contract. *First Bank & Trust Co. of Ill. v. Vill. of Orland Hills* 338 Ill. App. 3d 35, 40-41, 787 N.E.2d 300, 304-05 (1st Dist. 2003); *Owens*, 316 Ill. App. 3d at 344, 736 N.E.2d at 150; *Klemp*, 267 Ill. App. 3d at 580-81, 641 N.E.2d at 962.

Under the "plain language" of the Agreement, Hedinger Brands explicitly "reserve[d] the right to sell Beverages" to National Account Customers, of which Jewel/Osco is one. As a result, and as a matter of law, Central Beverage is entitled to no damages, be they an "invasion

---

[1] Arguably, the Agreement provides that it is to be construed in accordance with the laws of the State of Georgia. (Agreement, ¶ 8.5). Hedinger Brands is not aware of significant distinctions between Georgia and Illinois law on the points at issue in this case and believes that the outcome would be the same under Georgia law. As a result, it cites to Illinois law. *See, e.g., LaScola v. US Sprint Commc'ns*, 946 F.2d 559, 563 n.6 (applying Illinois law to diversity case in which neither party contended that the application of Illinois law, rather than Georgia law, would impact the decision of the court); *Auto Search, Inc. v. Auto. Prot. Corp.*, 2004 WL 783096, *2 (N.D. Ill. 2004) (same).

8

fee" or purported lost profits, based on sales made to Jewel/Osco in the Territory assigned to Central Beverage.

## IV. CONCLUSION.

At its heart, this is a dispute concerning a disgruntled former distributor who, after deciding it did not like the plain language of the Agreement it had entered, tried to force a renegotiation of the agreement by taking product (from a third party) that it had no intention of paying for. Hedinger Brands was entitled, under the plain language of the Agreement, to act as it did. As a result, and as a matter of law, summary judgment should be entered in its favor on Central Beverage's complaint.

Dated: July 10, 2008                    **BARNES & THORNBURG LLP**


By: /s/ Jonathan P. Froemel
**DWIGHT D. LUECK**
11 S. Meridian Street
Indianapolis, IN 46204-3506
Telephone: (317) 231-1313
Facsimile: (317) 231-7433
[Pro hac vice]

**JONATHAN P. FROEMEL**
**JAMES E. MICHEL**
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 357-1313
Facsimile: (312) 759-5646

Attorneys for Defendant,
**HEDINGER BRANDS, LLC**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the foregoing **Hedinger Brands' Memorandum in Support of Its Motion for Summary Judgment** was served via the Court's electronic filing system, this 10th day of July, 2008, on the following counsel:

>Richard A. Del Giudice, Esq.
>Earl E. Farkas, Esq.
>David N. Pruitt, Esq.
>GOZDECKI & DEL GIUDICE, LLP
>221 North LaSalle Street
>Suite 2200
>Chicago, IL  60601

/s/ James E. Michel

INDS02 DDL 971934v4